IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHRISTOPHER BRYANT GIBSON,           :

    Petitioner,                              :

                                                      CIVIL ACTION NO. 17-0040-WS-MU

                                  :

vs.                                              CRIMINAL NO. 13-0252-WS-MU

                                  :

UNITED STATES OF AMERICA,             :

    Respondent.                              :

## REPORT AND RECOMMENDATION

       This cause is before the Court on Petitioner Christopher Bryant Gibson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 53; *see also* Doc. 54 (memorandum of law)), the government's response in opposition (Doc. 58), and Petitioner's reply ("traverse") to the response of the United States (Doc. 59). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Following consideration of all relevant pleadings in this case, it is recommended that Gibson's conclusory § 2255 motion be **DENIED** without an evidentiary hearing. *Compare, e.g., Rosin v. United States,* 786 F.3d 873, 878 (11th Cir.) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence."), *cert. denied,* ___ U.S. ___, 136 S.Ct. 429, 193 L.Ed.2d 320 (2015), and *United States v. Bejacmar*, 217 Fed.Appx. 919, 921 (11th Cir.

Feb. 15, 2007) ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing.") *with Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) and *Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## FINDINGS OF FACT

On November 20, 2013, Gibson was charged by indictment with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). (Doc. 1 ("On or about November 12, 2013, in the Southern District of Alabama, Southern Division, the defendant, **CHRISTOPHER BRYANT GIBSON** by force and violence and intimidation, did take from the persons and presence of M.M. approximately $3,857 in monies belonging to, and in the care, custody, control, management and possession of First Community Bank, located at 7555 Highway 98, Daphne, Alabama, the deposits of which were then insured by the Federal Deposit Insurance Corporation."))[1] Gibson filed written notice of

---

[1]    18 U.S.C. § 2113(a) provides, in relevant measure, as follows: "Whoever, by force and violence, or by intimidation, takes . . . from the person or presence of another . . . any property or money or any other thing belonging to, or in the care, custody, control, management, (Continued)

intent to plead guilty to the sole count of the indictment on January 13, 2014 (Doc. 20)[2]

and entered a counseled guilty plea to bank robbery on January 23, 2014 (Doc. 45).

During the change of plea hearing, Gibson, who had one year of college under his belt,

informed the Court that he had never been treated for any mental illness (Doc. 45, at 5)[3]

_____

or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both." *Id.*

[2]    On the same date that Gibson filed his written notice of intent to plead guilty, the Defendant's attorney, Peter Madden, certified the following with respect to the preliminary guideline calculations of the probation officer:

1.    A copy of the Probation Officer's report containing the preliminary guideline calculations has been shown to the Defendant and we discussed the guideline calculations contained in the report;

2.    I have provided the Defendant with an independent assessment of the preliminary guideline calculations contained in the report;

3.    The Defendant has been given an opportunity to ask questions regarding the preliminary guideline calculations and I have responded to those questions; and

4.    The Defendant was advised that the preliminary guideline calculations contained in the report are based on the Probation Officer's review of the relevant information available to him/her at the time the report was completed and filed, and that the United States Sentencing Guidelines are advisory and do not bind the Court. Furthermore, the Defendant was also advised that the preliminary guideline calculations might be different from the final calculations in the event he[] is found guilty on any pending charge and a presentencing report is ordered.

(Doc. 19, at 1-2.) Importantly, based on the probation officer's Worksheet A (Doc. 16), it is clear that Gibson was cognizant of the two-level threat of death enhancement in accordance with USSG 2B3.1(b)(2)(F) (*see id.* at 2).

[3]    Gibson reported no mental health problems or history to the Pretrial Services Officer in early December of 2013. (*See* Doc. 15, at 3 ("There is no evidence to suggest the defendant has a current or past mental health condition.")). And while Gibson informed the Probation Officer (on, or about, March 12, 2014) that shortly after his incarceration on the robbery charge, he began having panic attacks and was receiving treatment for depression and anxiety (Paxil and BuSpar), he reported no "family history of mental or emotional health problems." (Doc. 25, ¶ 61.)

3

and his attorney stated that to the best of his knowledge Gibson was competent to enter a valid plea (*id.*). The Defendant acknowledged receiving a copy of the indictment, fully discussing the charge with his attorney, and stated he understood the charge pending against him. (*Id.* at 6.)[4] And though Gibson had no plea agreement with the government (*id.* at 7 (Gibson notified the Court that he signed no plea agreement and the Assistant United States Attorney informed the Court that the parties did not "have a plea agreement[]")), he stated that no promises had been made to him and he had not been forced or threatened to plead guilty (*id.* at 8). Petitioner also acknowledged his understanding that if convicted of Count 1 of the Indictment, he could receive a term of imprisonment of up to 20 years and that he would be ordered to pay restitution (*id.* at 9); that he had spoken to his attorney about how the sentencing guidelines might impact his case (*id.* at 10-11); and that he understood that the Court would not be able to determine an appropriate sentence until after completion of a presentence report, that the sentence imposed could be different from any estimate he had been given by his attorney, and that the Court could impose a sentence more severe or less severe that the sentence called for by the guidelines with no avenue available to him to withdraw his plea (*id.* at 11-12; *see also id.* ("[I]f the sentence is more severe than you expected or if I do not accept any sentencing recommendation in your plea agreement, you'll still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now.")). And after

---

[4]     Petitioner also informed the Court that he was satisfied by the representation he received from his attorney and had fully discussed the facts surrounding the charge with his attorney. (*Id*. at 6-7)

Gibson acknowledged the rights he was waiving by pleading guilty to the sole count of

the indictment (*see id.* at 13-14), the following occurred:

> THE COURT:        All right. And for Mr. Gibson, the plea as to Count 1 of the indictment charges a violation of Title 18 United States Code Section 2113(a), bank robbery. The elements of that offense are that you knowingly took money or property possessed by a federally insured bank, credit union, savings and loan association from or in the presence of the person described in the indictment and that you did so by means of force, violence, or intimidation.
>
> Do you understand that those are the elements of the offense to which you're pleading guilty, Mr. Gibson?
>
> DEFENDANT GIBSON:     Yes, sir.
>
> THE COURT:        Do you fully understand that if there's a trial in this case, the United States would be required to prove sufficient evidence to prove each of those essential elements beyond a reasonable doubt?
>
> DEFENDANT GIBSON:     Yes, sir.
>
> THE COURT:        Ms. O'Brien, what would the Government expect the evidence to show in this case?
>
> MS. O'BRIEN:        Your Honor, the United States would expect the evidence to show that on November 12th of 2013, the defendant entered the First Community Bank located at 7555 Highway 98 in Daphne, Alabama. That bank is federally insured.
>
> The defendant approached a teller and gave her a note. Part of that note instructed her not to give him a dye pack or he would kill her.[5] The robbery is recorded on video.

---

[5]     The final Presentence Investigation Report contains the following relevant information: "On November 12, 2013, at approximately 4:10 p.m., a white male wearing a baseball cap, sunglasses, and a green shirt entered the First Community Bank in Daphne, Alabama, and approached teller M.M., who asked the man if she could assist him. He handed her a note, which M.M. recalled stated '$8,000,' 'No Dye Pack,' and 'Kill You.' M.M. turned to her teller drawer at the drive through to retrieve the money, when the man said 'Don't go anywhere.' M.M. told the man that she did not have any money at the teller window where they were standing, and even opened the drawer so the man could see. The man stated 'hurry up,' and 'no dye packs.' M.M. then gathered cash from her teller drawer at the window, including (Continued)

The defendant left the bank with approximately $3,857 and the note which he presented to the teller.

Following the robbery, the defendant's photograph was circulated through the media, and a confidential informant provided information that revealed his whereabouts at a Red Roof Inn. The defendant was arrested by the Daphne Police Department and a portion of the funds were recovered in the defendant's possession, and part of the funds from the bank robbery had been used to pay for the hotel room.

The defendant claimed to have a medical issue and was taken to the hospital. While he was at the hospital, he was uncuffed and attempted to overpower a detective [who] was on the scene, breaking the detective's finger when they engaged in a struggle over the detective's firearm. That's what the United States would expect the evidence to show.

THE COURT:        All right. Mr. Gibson, did you, in fact, commit the acts and do the things that have been described to me by Ms. O'Brien?

MS. O'BRIEN:        Judge, I need to speak here. He admits to all the elements of the bank robbery. There are some disputed issues over whether there was a threat of death . . . and the business with the detective. A struggle over a firearm and a broken finger, that is not part of this case, and it's not in the discovery. There's no information about a broken finger, and the[re] are pending state charges regarding all of that; but as to the elements of the bank robbery, Mr. Gibson admits to that.

THE COURT:        Is that true, Mr. Gibson?

DEFENDANT GIBSON:        Yes, that's true.

THE COURT:        Then I find the facts and acts to which you have admitted support a violation of the charge contained in Count 1 of the indictment.

How do you plead to that? Guilty or not guilty[?]

DEFENDANT GIBSON:        Guilty, sir.

---

$500 in serialized bait bills and a tracking device, and handed it to the man. The man then flipped through the bills, turned, and walked casually through the back doors." (Doc. 25, at ¶ 5.)

THE COURT:        All right. Then it is the finding of this Court in the case of United States of America versus . . . Christopher Gibson that . . . you are fully competent and capable of entering an informed plea; that you're aware of the nature of the charge[] and the consequences of your plea; and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is, therefore, accepted, and . . . you are now adjudged guilty of that offense.

(*Id.* at 16-19.)

The draft Presentence Investigation Report was completed on March 12, 2014

(Doc. 23), after which the Defendant, through his attorney, filed the following objections

on April 7, 2014:

1.       The defendant objects to the 6 level adjustment pursuant to U.S.S.G. § 3A1.2(c)(1) contained in paragraph 23 of the draft Presentence Investigation Report. This adjustment applies only where a defendant assaults a law enforcement officer "during the course of the offense or immediate flight therefrom." Here, the bank robbery offense occurred in Daphne, Alabama on November 12, 2013. The next day, the defendant was arrested in Mobile, Alabama and transported to the FBI office in Mobile for questioning. The defendant was then transported to the Daphne Police Department. After he complained of stomach pains, he was taken to Thomas Hospital in Fairhope, Alabama. After examination and while he was being discharged from the hospital, the defendant struggled with the officer. Because[] the events at the hospital did not occur during the offense or in immediate flight therefrom, §3A1.2(c)(1) does not apply.

2.       The defendant objects to the 2 level adjustment pursuant to U.S.S.G. § 3C1.2 contained in paragraph 25 of the draft Presentence Investigation Report. The events which occurred at the hospital the day after the robbery are not part of the offense of conviction and are not relevant to conduct with respect to the bank robbery. While § 3C1.2 does not explicitly require that the conduct occur during the offense of in "immediate flight" therefrom, there must be some nexus to the offense of conviction. U.S.S.G. § 1B1.3(a)(1) provides that Chapter Three adjustments include relevant conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Further, an adjustment under this section should not be applied if the Court finds that an adjustment pursuant to 3A1.2(c)(2) applies

7

because it would result in impermissible double counting. Application Note 1 to § 3C1.2 provides: "Do not apply this enhancement where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in the offense level solely on the basis of the same conduct."

(Doc. 24, at 1-2.) The Probation Officer revised the Presentence Investigation Report on April 8, 2014 (Doc. 25, at 1) and that document was filed on April 9, 2014 (*id.*), along with an Addendum addressed to the Defendant's objections (Doc. 26). Paragraph 25 of the revised report reflects a 2-level adjustment of obstruction of Justice in accordance with U.S.S.G. § 3C1.1 (*id.* at 6), as opposed to the draft report reliance on § 3C1.2 (*compare id. with* Doc. 23, at ¶ 25), and the Addendum to the Presentence Report contains the following response of the Probation Officer to the Defendant's objection: "The probation officer agrees to the extent that the guideline was incorrectly cited. The report has been amended to reflect U.S.S.G. § 3C1.1 as the correct calculation. As noted in U.S.S.G. § 3C1.1 Commentary, Application Note 4(E), this guideline covers 'escaping or attempting to escape from custody before trial or sentencing.' This correction did not result in a change to the total offense level." (Doc. 26, at 1.) That Addendum also contains the Probationer's response to the Defendant's objection to the 6-level enhancement under U.S.S.G. § 3A1.2(c)(1). (*Id.*)

One day prior to sentencing, on April 22, 2014, counsel for the defendant filed the docket sheet and indictment from the Circuit Court of Baldwin County, Alabama reflecting that Gibson had been indicted on state charges mirroring "the federal offense as well as state offenses which are treated as sentencing enhancements in the Presentence Investigation Report." (Doc. 31.) During the sentencing hearing, on April 23, 2014, defense counsel argued at length about why the six-level enhancement

should not be applied (Doc. 46, at 3-6) and, as well, why the two-level enhancement, which had been changed from U.S.S.G. § 3C1.2 to § 3C1.1, should not be applied (*id.* at 6-7 ("[H]ere the adjustment is because the Defendant obstructed justice while attempting to escape from custody. And this is also, again, something that occurred on the day after the bank robbery after he had been apprehended and taken to the FBI office in Mobile and then transported to Daphne and then to the hospital. So, it wasn't during the course of the offense, and I think it's too remote . . . for this adjustment. And in addition, as to all these counts, Mr. Gibson has been indicted in the Circuit Court of Baldwin County. I filed a pleading yesterday with the docket sheet and the indictment which has, I think, five counts that cover all of this conduct.")). And after the trial judge indicated that both objections to the Guideline adjustments were being overruled (*id.* at 9), defense counsel asserted a "double counting" objection (*id.* at 9-10 ("Judge, given your finding on the six-point, I think that it's all one course of conduct and he shouldn't get . . . six levels plus the two levels. I think that's impermissible [double] counting because . . . increasing the levels under both Chapter 3 adjustments is impermissible because the attempted escape is part of the assault on the officer. So, it's accounted for in that six levels.")) that was rejected by the Court (*id.* at 10 ("I think there's sufficient factual basis here to separate the two adjustments. And given the unique circumstances of this case, the Court finds that there's no double counting here and that both adjustments should apply.")). Therefore, the Court "adopt[ed] the Presentence Report as published, noting that the Sentencing Guidelines ha[d] been accurately calculated, starting with a base offense level of 20. There's a two-level enhancement for theft from a financial institution. There's a two-level enhancement for threat of death, a six-level

enhancement for risk of harm, a two-level enhancement for obstruction of justice. Mr. Gibson is entitled to a three-level reduction for acceptance of responsibility, producing an adjusted offense level of 29. He has no countable criminal history points, placing him in Criminal History Category I, generating a guideline range of 87 to 108 months." (*Id.* at 11.)

Before the Court announced its sentence, defense counsel made a plea for the Court to run the sentence concurrent to any state sentence Gibson received and for a downward departure from the guideline range. (*See id.* at 11-13 & 14-15.)

> MR. MADDEN:      Yes, Your Honor. You should have received some letters. I'm not aware of . . . which you received. You received one from the Defendant. . . . And Your Honor, . . . this offense was out of character for [Mr. Gibson]. He has a criminal history . . . which is mostly his juvenile criminal history and primarily shoplifting cases, and there was one assault conviction which appears to be a fight when he was 15.
>
> As an adult, he had a drug offense and then an interference with custody regarding his daughter, and then the rest were the negotiating worthless negotiable instruments. There's no history of any kind of violence or the use of firearms, of robbery or, you know, serious assaultive behavior.
>
> And at the time that this occurred, he had . . . lost his job as a firefighter and had been using spice, which prompts people—my experience with that lately has been that people do things that are out of character, that are violent and bizarre. And it's like the old PCP effect. We don't see that much anymore, but I think the chemicals that they are using in the synthetic marijuana have a similar effect on behavior. And I think this offense was out of character for Mr. Gibson, and it's not one that will be repeated.
>
> You know, he's obviously in need of drug treatment. And I think the Court should also consider during this that he's been indicted . . . in Baldwin County for the robbery offense as well as the four other offenses related to the attempt to escape and assault on the officer.
>
> And you know, I'd ask . . . whatever sentence the Court imposes that it be ordered to run concurrently with any sentence imposed in [the]

10

Circuit Court of Baldwin County because . . . it's all the same offense. We have two sovereigns, but I think the Court should recognize that and order this one to run concurrently and that he serve the sentence in State custody just to ensure that he gets credit, because . . . even if it's ordered to run concurrently with the State sentence, he may not get credit from the Bureau of Prisons depending on what happens in State Court.

.　　.　　.

Judge, I think a sentence for the bank robbery below the Guidelines would be reasonable here because of the pending State charges. I think, you know, a typical bank robbery, unarmed as in this case with a note, is probably about . . . 36 to 42 months. And I think a sentence for this offense in this Court of 36 months would be appropriate.

Mr. Gibson, you know, as a result of the behavior after the robbery, . . . he's in the maximum security in Baldwin County. His custody is completely different from what it would have been otherwise . . . [and] his future is going to be much harder than it would have been otherwise had this just been the bank robbery. So, I'd ask you to take that into consideration in imposing your sentence.

(*Id.*)  Thereafter, the Court prefaced his sentence under the Sentencing Reform Act of

1984 of 96 months (*id.* at 19) with the following comments:

THE COURT:        All right. Mr. Gibson, I have considered all of the information available to me, the information I have in the Presentence Report, the information that's been presented here in court. I have a letter from you that I have read and will consider as well.

And I'm obligated to consider information as it impacts the sentencing statute in this case and every criminal case that I deal with, and it's Section 3553(a) of Title 18, which requires that I consider a number of factors, including your personal history and characteristics, the nature of the offense, your criminal history or lack of criminal history if that's the case, and the other factors that are set forth in the statute.

And then I'm obligated to come up with a sentence that is fair and reasonable, sufficient but not more than necessary to accomplish the sentencing objectives set forth in the statute.

I'm also obligated to consider the Sentencing Guidelines in the case and to determine whether I am properly advised by the guideline range generated by the facts and application of the guideline provisions,

11

and I've done all that. That's my burden, my duty, if you will, in this case and every case that I have.

So, when I consider all of those factors, I normally start with the nature of the offense. And I've seen many bank robberies in this Court. I haven't seen too many like yours. You know, I've seen bank robberies with and without weapons, with and without threats, with and without flight, resisting, and risk of harm.

Yours is a little unique, I'd say, in that, you know, we had the detour to the hospital which resulted in, you know, an attempt to flee and a struggle with law enforcement, which could have turned really bad, there's no question about it. It could have resulted in your death, death of a police office, or innocent bystanders. Certainly, it was a really, really bad situation.

. . . [S]ome of that's been taken into account by the adjustments of the Guidelines that we've talked about here today, and that's the purpose of the Guidelines is to allow for adjustments for that kind of activity.

Mr. Madden has highlighted the other kind of result in this case, and that[] it results in your increased status in terms of incarceration. And that's something that's going to follow you. I mean, there's no way we can change that now. The fact that you did what you did on that day becomes part of your record and will affect the level of incarceration from this point on in the Federal system. I don't know whether it will in the State system or not, [] assuming that you receive any State time, but it will affect you in the Federal system for some time.

So, you know, the nature of the offense here, this is not the typical bank robbery that I normally see by virtue of your actions post-robbery. So, I take that into account.

I've also considered your personal history and characteristics as much as I can. I've read your letter. You know, there's some balancing that goes on with that in terms of the good things that I try to find about people that are before me during sentencing. You know, you've got some of that, but you've also got a criminal history that's pretty interesting because you have no criminal history points, yet you have a criminal history that starts at age 12 and follows you until today's date. There's a lot of criminal history, but it generates no criminal history points. Ms. O'Brien's statement that the criminal history is underrepresented is probably true. So, I should consider that and will consider that in terms of trying to fashion a sentence here.

12

You know, you're not standing before me with no criminal history; you're just standing before me with no criminal history points. So, there's a big difference here, in my mind. And you've gotten the benefit of no criminal history points in the guideline calculations; otherwise, it could be much higher than it is now.

So, you know, the bottom line is when I consider all of this, the criminal history or lack thereof, . . . your personal history and characteristics, the nature of the offense, and then I apply the Guidelines in this case, it occurs to me that what I see here in terms of the range of the Guidelines is an appropriate sentence.

And I will say that I'm going to give you a sentence within what I see to be the range of the Guidelines here, and it's a sentence that I would impose regardless of my rulings on any of the objections to the guideline calculations because it's the judgment of this Court because of the nature of the offense and your criminal history and other factors that I consider under Section 3553(a)[6] that a sentence of 96 months is the sentence that should be imposed and will be imposed in this case. And I find that sentence to be sufficient but not more than necessary to accomplish the sentencing objectives set forth in the statute.

I am denying your motion to run that concurrent. I don't think that's appropriate in this case. The State can do whatever they decide they want to do in your case. My guess is that they may look at this sentence in Federal Court and say that that's enough. They may or may not, I don't know, but I'll leave that up to them. I don't think it's my place to try to run a sentence concurrent with their sentence. If they want to do that, if they want to run their sentence concurrent with this Federal sentence, then that's up to them, and I have no objection to them doing that if that's what they deem to be appropriate under the circumstances.

---

[6]     As recognized in the Eleventh Circuit's decision, "[t]he § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims." (Doc. 48, at 3 n.1, citing 18 U.S.C. § 3553(a)).

(*Id.* at 15-18 (footnote added); *see also id.* at 21 ("For the reasons given, the Court finds that the sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.")). The Court entered its written judgment on April 29, 2014. (Doc. 34.)

Gibson, through his attorney, filed written notice of appeal on May 9, 2014. (Doc. 36.) A panel of the Eleventh Circuit Court of Appeals issued a per curiam decision on December 18, 2014 affirming Gibson's conviction and sentence. (Doc. 48.) Therein, the panel concluded that this Court erred in applying the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) (*id.* at 4) but also found this error to be harmless given the Court's indication that "it would have imposed the same sentence without the six-level increase." (*Id.* at 5.)[7]

> Here, the district court erred in applying the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) because the assault on the police officer did not occur during "immediate flight." Gibson's altercation with the police officer did not occur instantly, "without delay," or "without loss of time." See Dougherty, 754 F.3d at 1359. As the record reveals, Gibson was arrested at a hotel the day after the robbery, interviewed at a FBI office, and then transported to a local police station, at which point he faked an illness and, after being taken to the hospital, attacked the officer guarding him. He tried to wrestle away the officer's gun while yelling death threats and breaking the officer's thumb in the process. Thus, Gibson's assault was not "immediate," as enough time had passed that Gibson was able to spend the night at a hotel, be interviewed by the FBI, and be transferred to the local police department.

> Had the district court ruled in Gibson's favor on the guidelines issue, the presentence investigation report would have yielded an advisory guideline range of 46 to 57 months' imprisonment. See U.S.S.G. Ch. 5, pt.

---

[7]   "On appeal, Gibson argues that: (1) the district court erred in applying the six-level increase because his altercation with the police officer occurred the day after the robbery; and (2) this error was not harmless because it resulted in a substantively unreasonable sentence." (Doc. 48, at 2.)

A. Nonetheless, its error in ruling against Gibson on the guidelines issue was harmless because the district court indicated that it would have imposed the same sentence without the six-level increase. Furthermore, even without the increase, the ultimate sentence was substantively reasonable. As the record shows, the 39-month upward variance, though substantial, accomplished the needs for the sentence to reflect the seriousness of the offense, reflect the nature and circumstances of the offense, take into account the defendant's history and characteristics, and protect the public. Moreover, the district court properly considered Gibson's dangerous conduct and consistent criminal history even though these fact were not reflected in the guidelines range. Indeed, Gibson not only robbed a bank during which he made a death threat but engaged in an altercation with a police officer following his arrest that placed himself, the officer, and others in danger. He actively attempted to get the officer's gun and threatened to kill him during the assault. In addition, Gibson's criminal history category of I did not adequately reflect the 17 convictions he received as a juvenile and an adult. His criminal history and escalation to the instant crime of violence invoke the need to consider the public safety aspect of his sentence.

In short, because Gibson's resulting 96-month sentence was "within the range of reasonable sentences indicated by the facts of the case," the district court committed harmless error when it applied a six-level enhancement under U.S.S.G. § 3A1.2(c)(1). Accordingly, the court did not clearly abuse its discretion in sentencing Gibson by an upward variance of 39 months from the top end of the appropriate guidelines range.

(*Id*. at 4-6.) The per curiam opinion of the Eleventh Circuit panel was issued as mandate on June 12, 2015 (Doc. 49) and Gibson's petition for writ of certiorari to the United States Supreme Court was denied on May 31, 2016 (Doc. 52, at 2).[8]

---

[8]    In the meantime, Gibson filed a motion seeking credit for the time he served in custody prior to his sentencing, specifically credit for the time he spent in custody from "the 13th of November, 2013 through the 9th of July, 2014." (Doc. 50, at 1; *see also id*. at 2 ("While this Court ruled not to run Petitioner's sentence concurrent with any State sentence imposed, the State ruled to run it[]s sentence concurrent with Petitioner's Federal sentence. [] The Federal Bureau of Prisons' Sentence Computation Center, because of the concurrent sentences, failed to issue credit for time served prior to the 9th day of July, 2014 without an order from this Court. The State sentence did not begin until the 25th day of August, 201[4].")). The Court granted in part Gibson's motion. (Doc. 51.)

On April 23, 2014, the defendant was sentenced to a term of imprisonment of 96 months. [] On July 9, 2014, the defendant was sentenced on
(Continued)

On January 12, 2017, Gibson filed his motion to vacate in this Court. (Doc. 53, at 13). Therein, Petitioner alleges numerous instances of ineffective assistance of trial and appellate counsel and, as well, asserts that this Court imposed a procedurally and substantively unreasonable sentence. (*See id.* at 4, 5 & 20). Gibson asserts that his trial attorney provided constitutionally ineffective assistance in the following respects: (1) he failed to conduct an investigation into, or hire an investigator to investigate, the charges brought by the government and Petitioner's background and he failed to contact potential witnesses (Doc. 53, at 14; *see also id.* ("[T]he movant provided Mr. Madden with information regarding his employment as a municipal firefighter/EMT[, a]n occupation in which the movant was directly involved serving his community by saving lives. Movant also provided Mr. Madden with information about his time donating services building accessibility ramps for the newly disabled. Despite movant's providing names and contact information to Mr. Madden to follow-up with an investigation, no attempt was made to bring this information to the Court's attention either during the pre-sentence investigation or at sentencing."); Doc. 54, at 14-16)); (2) he failed to convey a plea agreement alluded to by the government during sentencing and/or he failed to

related state charges, that sentence to run concurrent with the federal sentence. It was and is the Court's intent that the defendant receive credit for time served from April 23, 2014 to July 9, 2014.

Accordingly, the judgment (Doc. 34), is **amended** *nunc pro tunc* to provide that the defendant's sentence is to run concurrently with the defendant's state sentence. In all other respects, the judgment dated April 23, 2014 and entered April 29, 2014 remains in full force and effect.

(*Id.*) The Court parenthetically noted that Gibson could "petition the Bureau of Prisons to receive credit on his federal sentence for the period from November 13, 2013 to April 23, 2014. The Court has and expresses no opinion whether the BOP can or will allow such credit." (*Id.* at n.1.)

pursue a plea agreement (Doc. 53, at 15; *see also* Doc. 54, at 16-19); (3) he grossly underestimated Petitioner's sentencing exposure (Doc. 53, at 15; *see also* Doc. 54, at 19); (4) he failed to provide Petitioner with an amended copy of the PSR, which reflected a change in the Chapter 3 enhancements from U.S.S.G. § 3C1.2 to § 3C1.1 (Doc. 53, at 15; *see also* Doc. 54, at 19-20); (5) he failed to request a psychiatric evaluation of Petitioner despite his (Gibson's) treatment with psychotropic medication and being placed on "suicide prevention watch" (Doc. 53, at 16; *see also* Doc. 54, at 20-21); (6) he failed to assert a "meritorious nexus" objection to the obstruction of justice enhancement under U.S.S.G. § 3C1.1 (Doc. 53, at 16; *see also* Doc. 54, at 21-22); (7) he failed to object to the Court's imposition of a substantively unreasonable sentence based upon an abuse of discretion for considering improper factors when weighing the § 3553(a) factors (Doc. 53, at 16; *see also* Doc. 54, at 22); and (8) he failed to represent Petitioner's positive character traits and possible mental disorder during sentencing (Doc. 53, at 17; *see also* Doc. 54, at 22-23). As for appellate counsel, Gibson claims that she provided constitutionally ineffective assistance in the following respects: (1) she failed to argue on appeal that the district court's imposition of a sentence based on conduct which occurred subsequent to the robbery was an abuse of discretion in that it relied on improper factors when weighing "the 3553(a) history and characteristics of the defendant" (Doc. 53, at 18; *see also* Doc. 54, at 24-25); (2) she failed to argue on appeal that the district court's imposition of a sentence based on the Petitioner's juvenile criminal history was an abuse of discretion in that it relied on improper factors when weighing "the 3553(a) history and characteristics of the defendant" (Doc. 53, at 18; *see also* Doc. 54, at 25-26); (3) she failed raise on appeal a meritorious challenge to

17

the obstruction of justice enhancement based on the "nexus element" (Doc. 53, at 18; *see also* Doc. 54, at 26-27); (4) she failed to provide to the appellate court the district court's statement of reasons which shows that the district court did not intend to give an outside-the-guidelines sentence (Doc. 53, at 19; *see also* Doc. 54, at 28); and (5) she failed to request oral argument, which "could have influenced the appellate court's ruling." (Doc. 53, at 19; *see also* Doc. 54, at 28). Finally, Gibson contends that this Court imposed a procedurally and substantively unreasonable sentence by: (1) improperly imposing enhancements pursuant to U.S.S.G. §§ 3A1.2(c)(1), 2B3.1(b)(2)(F), and 3C1.1 (Doc. 53, at 20; *see also* Doc. 34, at 31-33); (2) failing to enforce the requirements of Rule 32(g), as well as 18 U.S.C. § 3552(d), by ensuring that he receive a copy of the amended PSR containing a change in the one Chapter 3 enhancement from § 3C1.2 to § 3C1.1 (Doc. 53, at 20; *see also* Doc. 54, at 33-34); (3) erring in considering Petitioner's juvenile court record when sentencing for an offense committed as an adult (Doc. 53, at 20; *see also* Doc. 54, at 34-35); (4) erring in stating that it would impose the same sentence regardless of its rulings on any objections to the guidelines calculations "because when the Court referenced it was sentencing based on the 3553(a) factors, it essentially imposed a non-guidelines departure or variance without explaining the specific reasons for doing so[]" (Doc. 53, at 21; *see also* Doc. 54, at 35-36); and (5) violating 18 U.S.C. § 3553(a)(4) & (a)(6) in failing to "correctly consider the kinds of sentence[s] and the sentencing range established[]" (Doc. 53, at 21; *see also* Doc. 54, at 36-37).

In support of his motion to vacate, Gibson attached to his memorandum of law his self-styled affidavit (Doc. 54, at 39-41), which is actually a declaration, as Petitioner

himself recognizes (*see id.* at 41 ("I declare under penalty of perjury that each of the facts set out in this **declaration** are true and correct as of my own personal knowledge and that if called as a witness to testify in this matter, I could and would competently testify to each of the facts set out in this **declaration**." (emphasis supplied))), *see Delano v. Mastec, Inc.,* 2011 WL 1557863, *1 (M.D. Fla. Apr. 25, 2011) ("'Mere submission of a document calling itself an *affidavit* does not make it an affidavit.' . . . An affidavit is '"[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."' . . . However, even if erroneously styled an 'affidavit,' an unsworn declaration can have the force and effect of an affidavit if it is signed, dated, and includes language 'in *substantially* the following form . . . "I declare (or certify, verify, or state) under penalty of perjury . . . that the foregoing is true and correct. Executed on (date). (Signature)."'"), and reads, in relevant part, as follows:

> 3.      On November 13, 2013, I was booked into the Baldwin County Jail in Bay Minette, Al and placed on "suicide watch." I remained on "suicide watch" for approximately three weeks.

> 4.      On December 4, 2013, at my arraignment [], I met my court appointed attorney, Peter J. Madden. I asked him how much time I was looking at to which he replied "no more than five years but most likely three to four years.["]

> 5.      In or about the second week of December, 2013, Mr. Madden made an attorney visit to me at the Baldwin County Jail. I was provided copies of the Sentencing Guidelines Worksheets, which seemed to support Mr. Madden's estimation of a sentence less than five years. Mr. Madden again said I would most likely get three to four years in prison. He advised me that it would be best to enter a blind plea of guilt.

> 6.      In December, 2013, I requested mental health assistance at the Baldwin County Jail. I was provided two psychotropic medications to treat my symptoms.

19

7.      On January 23, 2014, upon the advice of Mr. Madden, I entered a blind plea of guilt to bank robbery. No mention was made to me about a proffered agreement by the government.

8.      In March, 2014, I was interviewed by a U.S. Probation Officer with Mr. Madden present. During the interview I advised that I had been on "suicide watch" and that I was being treated with psychotropic medications. These revelations were noted in the Pre-Sentence Report ("PSR").

9.      In or around March, 2014, Mr. Madden made a second attorney visit to discuss the "PSR". After reviewing this "PSR" I objected to making a threat of death and I was upset that my sentencing exposure was double what he had advised.

10.     On April 23, 2014, I was sentenced, by Honorable Judge Steele[,] to 96 months imprisonment. At the outset of the hearing, Mr. Madden failed to object to the threat of death enhancement[;] when I brought this to his attention he just told me to be quiet. At this hearing was the first I learned that the reckless endangerment enhancement had been changed to an obstruction of justice enhancement.

(Doc. 54, at 39-41).

## CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As indicated above, Petitioner's overarching claim is that constitutionally ineffective assistance of counsel during pre-trial proceedings, at sentencing, and on appeal entitles him to the relief

afforded by 28 U.S.C. § 2255. (*Compare* Doc. 63 *with* Doc. 64). Accordingly, the undersigned turns first to Gibson's various claims of ineffective assistance of trial and appellate counsel before considering the Petitioner's secondary argument that this Court abused its discretion by imposing a procedurally and substantively unreasonable sentence.

**A.    Did Gibson's Trial or Appellate Attorney Provide Constitutionally Ineffective Assistance?** It is clear that in order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").[9] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a

---

[9]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

*Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom.*

*Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[10]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[11] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means, supra,* 433 Fed.Appx. at 855 (internal quotation marks and citations omitted; footnote added); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the

---

[10]    It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley,* 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[11]    In order to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . .  Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States,* 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir. 1984).[12]

_____

[12]     In the context of sentencing following entry of a guilty plea, the court simply considers whether petitioner has established, in accordance with *Strickland, supra,* that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. May 12, 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 364 Fed.Appx. 769 (3rd Cir. 2010), *cert. denied,* 562 U.S. 1191, 131 S.Ct. 1026, 178 L.Ed.2d 848 (2011).

In the context of a claim of ineffective assistance of appellate counsel, the Court's analysis is further guided by recognition of the principles that an appellate attorney "is not ineffective for failing to raise claims 'reasonably considered to be without merit[,]'" *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 892, 148 L.Ed.2d 799 (2001); *see also Jones v. Secretary, Dep't of Corrections,* 487 Fed.Appx. 563, 568 (11th Cir. Aug. 24, 2012) (same), nor is she required "to raise every 'colorable claim suggested by a client[.]" *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983); *see also Brown v. United States,* 720 F.3d 1316, 1335 (11th Cir. 2013) ("An attorney is not required under the Constitution or the *Strickland* standards to raise every non-frivolous issue on appeal[.]"), *cert. denied,* ___ U.S. ___, 135 S.Ct. 48, 190 L.Ed.2d 53 (2014); *see Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991) (recognizing that appellate advocates do not have to raise every non-frivolous issue on appeal), *cert. denied,* 502 U.S. 1077, 112 S.Ct. 981, 117 L.Ed.2d 144 (1992). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the

presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

With these principles in mind, the undersigned considers first Petitioner's claims against his trial attorney and then his claims against his appellate attorney.

1.    **Trial Counsel's Performance**. As noted, Gibson claims that his trial attorney provided constitutionally ineffective assistance in: (a) failing to conduct an investigation into, or hire an investigator to investigate, the charges brought by the government and Petitioner's background and in failing to contact potential witnesses; (b) failing to convey a plea agreement alluded to by the government during sentencing and/or failing to pursue a plea agreement; (c) grossly underestimating Petitioner's sentencing exposure; (d) failing to provide Petitioner with an amended copy of the PSR, which reflected a change in the Chapter 3 enhancements from U.S.S.G. § 3C1.2 to § 3C1.1; (e) failing to request a psychiatric evaluation of Petitioner despite his

treatment with psychotropic medication and being placed on "suicide prevention watch"; (f) failing to assert a "meritorious nexus" objection to the obstruction of justice enhancement under U.S.S.G. § 3C1.1; (g) failing to object to the Court's imposition of a substantively unreasonable sentence based upon an abuse of discretion for considering improper factors when weighing the § 3553(a) factors; and (h) failing to represent Petitioner's positive character traits and possible mental disorder during sentencing.

Gibson initially claims that his trial attorney failed to conduct an investigation into, or hire an investigator to investigate, the charges brought by the government and the Petitioner's background and in failing to contact potential witnesses. Petitioner makes only a conclusory statement that his trial attorney was ineffective in failing to investigate the "charges" brought by the government and at no time expounds on what more his attorney could have done in investigating those charges that would have made him plead not guilty and insist on going to trial (*compare* Doc. 53, at 14 *with* Doc. 54, at 14-16); therefore, he certainly has not established prejudice with respect to the "failure to investigate charges" prong of this claimed instance of ineffective assistance of counsel. *See Hill, supra,* 474 U.S. at 59, 106 S.Ct. at 370 (to establish prejudice a petitioner must establish "a reasonable probability that, but for counsel's error[], he would not have pleaded guilty and would have insisted on going to trial."). Gibson's real beef appears to be his belief that his trial attorney failed to investigate his "background" and contact potential witnesses about this background in order to bring this information to the Court's attention "during the pre-sentence investigation or at sentencing." (Doc. 53, at 14 ("[T]he movant provided Mr. Madden with information regarding his

employment as a municipal firefighter/EMT[, a]n occupation in which the movant was directly involved serving his community by saving lives. Movant also provided Mr. Madden with information about his time donating services building accessibility ramps for the newly disabled. Despite movant's providing names and contact information to Mr. Madden to follow-up with an investigation, no attempt was made to bring this information to the Court's attention either during the pre-sentence investigation or at sentencing."); *see also* Doc. 54, at 15 (same)). Gibson's base allegation that trial counsel did not investigate his background and bring this information to the attention of the Court during the pre-sentence investigation and during sentencing is affirmatively contradicted by the record. The Presentence Investigation Report ("PSR"), which the Court certainly reviewed and considered (*see* Doc. 46, at 11 & 15), includes a section on offender characteristics (Doc. 25, at 14-17) that specifically referenced Gibson's employment as a firefighter with EMT training (*id.* at 16 & 17) and, at sentencing, his trial attorney specifically referenced his past employment as a firefighter (Doc. 46, at 12). Moreover, the sentencing transcript references the Court's receipt of a letter from Gibson himself, which presumably spoke to his good character and deeds. (*Compare id.* at 15 ("I have a letter from you that I have read and will consider as well.") *with id.* at 17 ("I've read your letter. You know, there's some balancing that goes on with that in terms of the good things that I try to find about people that are before me during sentencing. You know, you've got some of that . . . .")). All of this evidence was, of course, considered by the Court in determining what sentence to impose (*id.* at 15-18). And since Petitioner's background/personal history as a firefighter and evidence of his good character/characteristics and deeds was before the Court (including, through the

PSR) at sentencing, the undersigned simply cannot find that trial counsel was constitutionally deficient in not supplying more such information (assuming it existed).[13] Moreover, Petitioner has not established (and, in truth, cannot establish) that the result of his sentencing would have been different had trial counsel supplied the court with additional personal history and characteristics information, given the various other factors the sentencing court takes into account (e.g., the nature of the offense and criminal history or lack thereof, etc.), the balancing required of the court in reaching a fair and reasonable sentence, and this Court's clear statement on the record that 96 months was a reasonable sentence (Doc. 45, at 18).

Gibson next argues that his trial attorney failed to convey a plea agreement alluded to by the government during sentencing and/or failed to pursue a plea agreement. (Doc. 53, at 15; *see also* Doc. 54, at 16-19.) Petitioner suggests that the following comment by the Assistant United States Attorney ("AUSA") alludes to a plea agreement that was not conveyed to him: "[A]nd [] under the circumstances of this particular case that there is no plea agreement, that a sentence at the high end of the Guidelines would be appropriate." (Doc. 46, at 14.)  This language, however, can only be read as recognition by the AUSA of the fact that there was no plea agreement. The language provides no suggestion that there was a plea agreement conveyed to his attorney by the AUSA that was not, in turn, conveyed by his attorney to him. Therefore,

---

[13]    The case cited by Petitioner in his memorandum of law in support of his deficiency argument, *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), was a death case, and cannot "carry the day" for Gibson in this case given the clear evidence that counsel referenced his client's letter (attesting to his good character and deeds) and his client's background as a firefighter.

there exists no factual basis upon which to find that either prong of the *Strickland* standard is met here, only Petitioner's conclusory allegations and musings which are decidedly insufficient. *See Wilson v. United States,* 962 F.2d 996, 997 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'"). And Petitioner's "alternative" claim that his trial attorney erred in failing to pursue a plea agreement simply constitutes an attack on his attorney's advice to enter a blind plea (that is, a plea without a plea agreement). (*See* Doc. 54, at 16 & 18 (referencing that his trial attorney advised him to enter a blind plea, which thereby exposed him to "the fullest punishment allowed by law")). Gibson, however, cannot establish deficient performance by his trial attorney in this regard because evaluating the trade-off represented by a blind plea— the defendant remaining free at sentencing to challenge all sentencing enhancements and appeal his sentence on any available grounds but foregoing a government recommendation of a low-end sentence—"represents a quintessentially strategic decision, immune from second-guessing in the guise of an ineffective assistance challenge." *Bracy v. United States,* 2010 WL 749330, *7 (S.D. Ala. Mar. 2, 2010).[14]

As for Petitioner's contention that his trial attorney "grossly" underestimated his sentencing exposure (Doc. 53, at 15; *see also* Doc. 54, at 19; *cf.* Doc. 54, Declaration

---

[14] Petitioner also cannot establish prejudice because he has at no point indicated that he would have insisted on going to trial but for trial counsel's recommendation that he enter a blind plea, *see Hill, supra*; instead, his contention in this regard never deviates from the recognition that he had to plead guilty in this case. Indeed, because there is no question but that Gibson robbed the federally insured First Community Bank in Daphne, Alabama of almost $4,000 on November 13, 2013, Petitioner had to plead guilty in order to receive credit for acceptance of responsibility and thereby reduce his sentence exposure as much as possible. Thus, because Gibson has not once indicated that he would have insisted on going to trial but for trial counsel's recommendation that he enter a blind plea, he cannot establish prejudice.

of Christopher B. Gibson, at ¶ 4 (he was told by Madden during his arraignment that he was looking at most at five years but likely only three to four years)), the undersigned cannot find any deficiency in performance given that the "estimates" attributed to Madden by Gibson were "right on target" but for the erroneous application of the six-level enhancement under U.S.S.G. § 3A1.2(c)(1). (*See* Doc. 48, at 5 ("Had the district court ruled in Gibson's favor on the guidelines issue, the presentence investigation report would have yielded an advisory guideline range of 46 to 57 months' imprisonment.")). Moreover, Petitioner cannot establish prejudice and not simply because he swore under oath that he understood the sentencing guidelines may be different than any estimates relayed to him by his attorney (Doc. 45, at 11) but more importantly because he does not allege that he would have insisted on going to trial but for counsel's sentence-exposure estimates (*compare* Doc. 53, at 15 *with* Doc. 54, at 19). Instead, he asserts he would have "pursued plea negotiations rather than agreeing to enter a blind plea of guilt[,]" an argument which simply returns the undersigned full circle to the previous conclusion that trial counsel's recommendation that Petitioner enter a blind plea represents "a quintessentially strategic decision, immune from second-guessing in the guise of an ineffective assistance challenge." *Bracy, supra.*

Petitioner's claim that his trial attorney was ineffective in failing to provide him with a copy of the amended PSR, or discuss its contents with him (Doc. 53, at 15; *see also* Doc. 54, at 19-20), is refuted by the record. Indeed, at sentencing Petitioner's attorney affirmatively indicated that he discussed the report with his client and Gibson informed the Court that he understood what was contained in the report. (Doc. 46, at 3.) Accordingly, the undersigned lacks a factual basis to find that counsel was

30

constitutionally deficient in this regard. In addition, given that Gibson, through his attorney, was afforded the opportunity to challenge the information contained in the revised PSR and trial counsel specifically asserted a "nexus" objection to the two-level obstruction of justice enhancement under U.S.S.G. 3C1.1 (Doc. 46, at 6-7), albeit not the "nexus" argument Gibson now claims he should have made (*compare id. with* Doc. 53, at 15 (indicating the nexus argument should have been that at the time of the alleged conduct warranting enhancement, no federal charges had been filed)), the undersigned cannot find that trial counsel was constitutionally deficient. *Cf. Pair, supra,* 373 Fed.Appx. at 982 ("[J]udicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable.").

Petitioner simply has not established that his trial attorney was deficient in failing to request a psychiatric evaluation, given that, by Petitioner's own admission, his attorney did not know anything about him being on "suicide watch" and being treated with BuSpar and Paxil until March of 2014 (Doc. 54, Gibson declar., at ¶ 8)—that is, after his January 23, 2014 entry of a guilty plea, during which he gave no indication to the Court or his attorney that he was not fully competent to enter a valid plea and, indeed, competently answered the Court's questions (Doc. 45, at 5, 6-7, 7, 8, 9 10-11, 11, 11-12, 14 & 16-19)—and he nowhere argues that he was incompetent when he

entered his guilty plea (*compare* Doc. 53, at 16 *with* Doc. 54, at 20-21).[15] And his attempt to suggest that counsel's failure to act impacted his sentence only (*see, e.g.* Doc. 54*,* at 21 ("Counsel's failure to request a psychiatric evaluation prejudiced movant in that there is a reasonable probability that had the ultimate diagnosis of PTSD been made prior to sentencing rather than following sentencing, movant would have been eligible for a 5K2.13 departure or at least a lower punitive sentence pursuant to the 3553(a) factors.")) is simply unavailing because this argument presupposes (or contains the implicit admission) that his mental condition did not impact the validity of his plea, which occurred much closer in time to the commission of the robbery than his sentencing, and, consequently, undermines his argument of prejudice. In other words, Petitioner's backhanded admission that he was competent to enter a plea of guilty on January 23, 2014 (that is, he was not laboring under a significantly reduced mental capacity at the time of his plea), just over two months after the November 12, 2013 bank robbery, dooms his prejudice argument because if Petitioner was not laboring under significantly reduced mental capacity (that is, he was competent) at the time of entry of his guilty plea, he certainly would be in no position at sentencing to contend that he committed the bank robbery while suffering from a reduced mental capacity.

As alluded to earlier, trial counsel was not constitutionally deficient in making the "nexus" argument against application of the two-level enhancement under U.S.S.G. § 3C1.1 that Petitioner now claims he should have made. Indeed, trial counsel made a

---

[15]     Stated somewhat differently, based on the facts in this case, Petitioner cannot establish that no competent attorney would have done as Madden did in this case in (or by) not filing a motion for psychiatric evaluation. *See Hall, supra,* 611 F.3d at 1290.

"nexus" argument against application of this enhancement during sentencing (Doc. 46, at 6-7), and the simple fact that it is not now the argument Petitioner says should have been made does not establish that counsel's performance during sentencing was constitutionally deficient. *Compare Pair, supra,* 373 Fed.Appx. at 981 (reminding reviewing courts to eliminate the distorting effects of hindsight) *with Hall, supra,* 611 F.3d at 1290 (recognizing that a "petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]").

Petitioner's claim that trial counsel provided constitutionally ineffective assistance "in failing to object to the Court's imposition of a substantively unreasonable sentence based on an abuse of discretion for considering improper factors when weighing the 18 U.S.C. § 3553(a) factors[]"  (Doc. 53, at 16; *see also* Doc. 54, at 22), is, simply put, meritless inasmuch as trial counsel specifically objected to the Court's sentence as being "greater than necessary to effectuate the purposes of sentencing in light of the 3553(a) factors as an unreasonable sentence[]" (Doc. 46, at 22). *See Raines v. United States,* 2006 WL 3420296, *7 (M.D. Ga. Nov. 27, 2006) (citing *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir. 1984), in concluding that counsel "cannot be considered ineffective for failing to raise claims that lack merit.").  Moreover, Gibson cannot establish prejudice in light of the Eleventh Circuit's specific findings that the sentence was substantively reasonable and not an abuse of discretion and that this Court "properly considered Gibson's dangerous conduct and consistent criminal history even though these facts were not reflected in the guidelines range." (Doc. 48, at 5; *see also id.* at 5-6 ("Indeed, Gibson not only robbed a bank during which he made a death threat but engaged in an altercation with a police officer following his arrest that placed

33

himself, the officer, and others in danger. He actively attempted to get the officer's gun and threatened to kill him during the assault. In addition, Gibson's criminal history category of I did not adequately reflect the 17 convictions he received as a juvenile and an adult.")).

Finally, Petitioner contends that his trial attorney erred in failing to "represent" his "positive character traits and possible mental disorder[]" during the sentencing hearing. (Doc. 53, at 16-17; *see also* Doc. 54, at 22-23.) Although the undersigned believes that these arguments have been sufficiently addressed in this opinion already, it should suffice to note that Petitioner has not established prejudice given that the transcript of the sentencing proceeding makes clear not only that Madden referenced Gibson's background as a firefighter but, as well, that the Court considered all the information in the PSR—which, of course, included information about Gibson's firefighting background, his family situation, and that he was being treated for symptoms of depression and anxiety with Paxil and BuSpar (*see* Doc. 25, at 14-17)— and in the letter Gibson wrote (Doc. 46, at 15; *see also id.* at 17 (court indicated that Petitioner's letter stressed the "good things" about himself)) in fashioning the sentence.[16]

---

[16]    In his reply to the government's response in opposition (Doc. 59), Gibson appears to argue for the first time that trial counsel was constitutionally ineffective in failing to object to the "threat of death" enhancement under U.S.S.G. § 2B3.1(b)(2)(F) (*see id.* at 1-2). This enhancement was applied based upon information supplied to the government by the teller of the First Community Bank that the robber handed her a note stating "'$8,000,' 'No Dye Pack,' and 'Kill You.'" (Doc. 25, at ¶ 5; *compare id. with id.* at ¶ 21 (adding two levels based on the threat of death); *see also* Doc. 45, at 17 (government's proffer at the change of plea hearing included the statements that "[t]he defendant approached a teller and gave her a note. Part of that note instructed her not to give him a dye pack or he would kill her. The robbery is recorded on video.")). Given that this enhancement would have been relatively easy to counter had the (Continued)

2.   __Appellate Counsel's Performance__.  Gibson contends that his appellate attorney's performance was constitutionally inadequate because: (1) she failed to argue on appeal that the district court's imposition of a sentence based on conduct which occurred subsequent to the robbery was an abuse of discretion in that it relied on improper factors when weighing "the 3553(a) history and characteristics of the defendant" (Doc. 53, at 18; *see also* Doc. 54, at 24-25); (2) she failed to argue on appeal that the district court's imposition of a sentence based on the Defendant's juvenile criminal history was an abuse of discretion in that it relied on improper factors when weighing "the 3553(a) history and characteristics of the defendant" (Doc. 53, at 18; *see also* Doc. 54, at 25-26); (3) she failed raise on appeal a meritorious challenge

---

contents of the note been captured on the video recording of the robbery or had the note Petitioner passed to the teller been recovered by authorities at the scene, information that the government necessarily would have provided defense counsel through discovery or otherwise made available for viewing (*see* Doc. 10, at 2), S.D. Ala. CrLR 16(b)(1) (listing nine categories of initial disclosures required of the government, including "[a]ll discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure"); Fed.R.Crim.P. 16(a)(1) (list of information subject to disclosure include "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies of portions of any of these items, if the item is within the government's possession, custody, or control: and the item is material to preparing the defense or the government intends to use the item in its case-in-chief), counsel's failure to assert this objection tells the Court that neither the video recording of the robbery or any other information supplied by the government through discovery could be utilized to counter the government's stance that the note Gibson passed the teller contained a threat of death (*see* Doc. 45, at 17 (AUSA's proffer also referenced that the defendant left the bank with "the note which he had presented to the teller.")). And, of course, trial counsel cannot be regarded as deficient for failing to assert a frivolous objection. *See United States v. Guerra,* 2015 WL 2088768, *7 (N.D. Fla. May 5, 2015) (string cite of cases in support of the conclusion that "[c]ounsel is not constitutionally ineffective for h[is] failure to make a frivolous objection[]" at sentencing). Moreover, Petitioner has not established prejudice because he cannot show that this Court would have ignored the government's guilty plea proffer or the information contained in the PSR in favor of Gibson's mere "hopeful" belief that the video recording would reflect the contents of the note or his unsubstantiated statement in his reply (Doc. 59), and perhaps his memorandum of law (*see* Doc. 54) but decidedly not in his declaration under penalty of perjury (Doc. 54, Gibson declar.), that the contents of the note were "This is a robbery, $8,000, No Dye Packs, No GPS." (*See* Doc. 59, at 2.)

35

to the obstruction of justice enhancement based on the "nexus element" (Doc. 53, at 18; *see also* Doc. 54, at 26-27); (4) she failed to provide to the appellate court the district court's statement of reasons which shows that the district court did not intend to give an outside-the-guidelines sentence (Doc. 53, at 19; *see also* Doc. 54, at 28); and (5) she failed to request oral argument, which "could have influenced the appellate court's ruling." (Doc. 53, at 19; *see also* Doc. 54, at 28).

Petitioner's first claim, that appellate counsel did not object to the district court's imposition of a sentence based on conduct that occurred subsequent to the robbery, is baseless inasmuch as appellate counsel specifically argued on appeal that "(1) the district erred in applying the six-level increase because his altercation with the police officer occurred the day after the robbery; and (2) this error was not harmless because it resulted in a substantively unreasonable sentence." (Doc. 48, at 2.) Therefore, appellate counsel was obviously not deficient in this regard. In addition, Petitioner cannot establish that he was prejudiced by any alleged deficiencies of appellate counsel related to this Court's imposition of sentence based on consideration of conduct that occurred subsequent to the robbery and on his juvenile criminal history (his second ground of alleged ineffective assistance of counsel) in light of the Eleventh Circuit's affirmance of his sentence on the basis that it was "substantively reasonable[,]" (Doc. 48, at 5) and not an abuse of discretion (*compare id. with id.* at 6 (finding no abuse of discretion) & 2 and 3 ("When reviewing a sentence for reasonableness, we ask 'whether the trial court abused its discretion.' . . . We consider the '"substantive reasonableness of the sentence imposed under an abuse-of-discretion standard,"' based on the '"totality of circumstances."'"), and its reasoning for

36

this determination (*id.* at 5-6 ("As the record shows, the 39-month upward variance, though substantial, accomplished the needs for the sentence to reflect the seriousness of the offense, reflect the nature and circumstances of the offense, take into account the defendant's history and characteristics, and protect the public. Moreover, the district court properly considered Gibson's dangerous conduct and consistent criminal history even though these facts were not reflected in the guidelines range. Indeed, Gibson not only robbed a bank during which he made a death threat but engaged in an altercation with a police officer following his arrest that placed himself, the officer, and others in danger. He actively attempted to get the officer's gun and threatened to kill him during the assault. In addition, Gibson's criminal history category of I did not adequately reflect the 17 convictions he received as a juvenile and adult. His criminal history and escalation to the instant crime of violence invoke the need to consider the public safety aspect of his sentence.")). In other words, the Eleventh Circuit's determination (*see id.*), which was made against the proper legal landscape (*compare id. with id.* at 3-4 ("In imposing a sentence, a district court considers the factors listed in 18 U.S.C. § 3553(a). 'A district court abuses its discretion and imposes a substantively unreasonable sentence when it fails to afford consideration to relevant [§ 3[5]53(a)] factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors.' United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted). But 'we will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor . . . as long as the sentence ultimately imposed is reasonable in light of all of the circumstances presented.' United States v. Snipes,

611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted). Juvenile convictions not similar to the conviction and too remote to use in calculating the defendant's criminal history category can be properly considered by the district court in its consideration of the 3553(a) factors. United States v. Jones, 289 F.3d 1260, 1267 (11th Cir. 2002).") refutes any prejudice here because it establishes that this Court's sentence was not substantively unreasonable and an abuse of discretion for the very reasons Petitioner has identified in his first two claims of alleged ineffective assistance of counsel (*compare* Doc. 48 *with* Doc. 53, at 18 & Doc. 54, at 24-26).

Turning to Gibson's claim that appellate counsel erred in failing to raise a "meritorious" argument attacking the obstruction-of-justice enhancement (Doc. 53, at 18; *see also* Doc. 54, at 26-27), the undersigned's finds it clear that Petitioner's appellate counsel wanted to concentrate her attack on her strongest argument, to the exclusion of other arguments, a decision that is indicative of effective appellate advocacy, not incompetence. *Compare Smith, supra,* 477 U.S. at 536, 106 S.Ct. at ("[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") *with Brown, supra,* 720 F.3d at 1335 ("An attorney is not required under the Constitution or the *Strickland* standards to raise every non-frivolous issue on appeal[.]"). In other words, appellate counsel's decision not to pursue the obstruction-of-justice enhancement issue was consistent with reasonable appellate strategy that, under the deferential standard of review articulated in *Strickland,* should not be second-guessed. Moreover, the prejudice prong is missing because Gibson has not cited to any case establishing the inapplicability of the obstruction-of-justice enhancement to the specific

conduct alleged in his case.

Gibson next argues that appellate counsel erred in failing to provide the Eleventh Circuit with this Court's written statement of reasons because that document shows that a guideline sentence was intended, not an "outside" the guideline sentence. (Doc. 53, at 19; *see also* Doc. 54, at 28.) There is no argument but that this Court, as an initial matter, intended to impose a sentence within the range of the sentencing guidelines (*see* Doc. 46, at 18); however, there also can be no argument but that the Court stated on the record that the sentence it was imposing (96 months) was proper "regardless of [the Court's] rulings on any of the objections to the guideline calculations" because it was the Court's judgment that this sentence should be imposed "because of the nature of the offense and [Gibson's] criminal history and other factors . . . under Section 3553(a)[.]" (*Id.*) In light of the foregoing, and because the Eleventh Circuit specifically affirmed Petitioner's sentence, on the basis that it was substantively reasonable and not an abuse of discretion (*see* Doc. 48), neither prong of the *Strickland* standard is met in this instance.

Gibson's final argument is that his appellate attorney was ineffective in failing to move for oral argument and that "[h]ad counsel requested oral argument and it been granted, it could have influenced the appellate court's ruling." (Doc. 53, at 19; *see also* Doc. 54, at 28-29.) This argument is speculative ("could") and based on too many contingencies (the Eleventh Circuit granting oral argument) to warrant relief, particularly a finding of prejudice.

**B.** **This Court's Sentence**. Gibson contends that this Court imposed a procedurally and substantively unreasonable sentence by: (1) improperly imposing

enhancements pursuant to U.S.S.G. §§ 3A1.2(c)(1), 2B3.1(b)(2)(F), and 3C1.1 (Doc. 53, at 20; *see also* Doc. 34, at 31-33); (2) failing to enforce the requirements of Rule 32(g), as well as 18 U.S.C. § 3552(d), by ensuring that he receive a copy of the amended PSR containing a change in the one Chapter 3 enhancement from § 3C1.2 to § 3C1.1 (Doc. 53, at 20; *see also* Doc. 54, at 28-29); (3) erring in considering Petitioner's juvenile court record when sentencing for an offense committed as an adult (Doc. 53, at 20; *see also* Doc. 54, at 34-35); (4) erring in stating that it would impose the same sentence regardless of its rulings on any objections to the guidelines calculations "because when the Court referenced it was sentencing based on the 3553(a) factors, it essentially imposed a non-guidelines departure or variance without explaining the specific reasons for doing so[]" (Doc. 53, at 21; *see also* Doc. 54, at 35-36); and (5) violating 18 U.S.C. § 3553(a)(4) & (a)(6) in failing to "correctly consider the kinds of sentence[s] and the sentencing range established[]" (Doc. 53, at 21; *see also* Doc. 54, at 36-37).

"It is long settled that a prisoner is procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that we rejected in his direct appeal." *Stoufflet v. United States,* 757 F.3d 1236, 1239 (11th Cir. 2014) (citations omitted); *see Rozier v. United States,* 701 F.3d 681, 684 (11th Cir. 2012) ("At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." (citations omitted)), *cert. denied,* 569 U.S. 911, 133 S.Ct. 1740, 185 L.Ed.2d 798 (2013). Here, the Eleventh Circuit, in finding Gibson's sentence substantively reasonable and not an abuse of discretion, specifically (or, at the very

least, implicitly) rejected Petitioner's arguments that this Court erred in considering Petitioner's juvenile court record and erred in stating that it would impose the same sentence regardless of its rulings on any objections to the guidelines calculations (*see* Doc. 48); therefore, Gibson is procedurally barred from again making these arguments (as stated in substantive grounds 3 and 4 above) in his motion to vacate. *See Stoufflet, supra,* 757 F.3d at 1243. In addition, the Eleventh Circuit specifically found that this Court "committed harmless error when it applied a six-level enhancement under U.S.S.G. § 3A1.2(c)(1)" (Doc. 48, at 6), thereby procedurally barring Gibson, in his motion to vacate (as stated in substantive ground 1 above), from again arguing this alleged error. *See  Stoufflet, supra.*

As for Petitioner's argument that this Court improperly applied the threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F) and the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 (the remainder of substantive ground 1 above), as well as his arguments that this Court violated 18 U.S.C. § 3553(a)(4) & (6) by failing to consider the kinds of sentences available and the sentencing range established (substantive ground 5 above) and that it erred in failing to ensure that he receive a copy of the amended PSR (substantive ground 2 above), this Court is procedurally barred from reaching the merits of those issues due to Petitioner's failure to advance those arguments on direct appeal, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Compare McKay v. United States,* 657 F.3d 1190, 1196 (11th Cir. 2011) ("Under the procedural default rule, 'a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding.'"), *cert. denied,*

41

568 U.S. 830, 133 S.Ct. 112, 184 L.Ed.2d 52 (2012) with *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003) ("The background for our discussion is the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.").[17] As referenced above, "[t]he exceptions [to the procedural default doctrine] are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." *McKay, supra,* 657 F.3d at 1196 (citation omitted).

> Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent.

*Lynn, supra,* 365 F.3d at 1234 (internal citations and quotation marks omitted; emphasis in original).

Here, Petitioner simply argues in a perfunctory manner that any "procedural defaults are overcome by ineffective assistance of appellate counsel" because he "directed appellate counsel to raise these arguments and to further argue the reasonableness of the sentence, however counsel refused." (Doc. 59, at 7.)[18] Beyond noting that Petitioner's claims of ineffective assistance of appellate counsel, discussed at some length above, make no mention of appellate counsel's failure to challenge the

---

[17]     "This rule generally applies to all claims, including constitutional claims." *Lynn v. United States,* 365 F.3d 1225, 1234 (11th Cir.) (citations omitted), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

[18]     Since Gibson does not contend that he is actually innocent of bank robbery, the fundamental miscarriage of justice exception to the procedural default doctrine is not applicable.

threat-of-death enhancement under U.S.S.G. § 2B3.1(b)(2)(F), the trial court's failure to properly consider certain factors contained in § 3553(a), and the trial court's failure to ensure that he receive a copy of the amended PSR,[19] Gibson has simply not established that the result of his appeal would have been different had appellate counsel raised the foregoing issues, and the § 3C1.1 enhancement issue, on direct appeal. Given trial counsel's statement at sentencing that he had received a copy of the presentence investigation report and discussed it with Gibson, followed by Petitioner's admission that he understood the contents of that report (Doc. 46, at 3), appellate counsel was bereft of any factual basis to argue that the trial court failed to ensure that Gibson received a copy of the amended PSR and the Eleventh Circuit likewise would have been without any basis to come to that conclusion. As for the obstruction-of-justice enhancement, as previously indicated, Petitioner has supplied no legal support for his position that the U.S.S.G. § 3C1.1 enhancement was not applicable under the circumstances of his case; therefore, he cannot show that appellate counsel erred in failing to raise this issue on direct appeal or that the result of his appeal would have been different had this issue been raised. And, as also previously indicated, Petitioner has offered this Court no credible evidence that the threat of death enhancement was improperly applied in this case; therefore, appellate counsel had no factual basis upon which to lodge an attack on this enhancement and the Eleventh Circuit had no basis to conclude that this enhancement was improperly applied. Finally, the Eleventh Circuit's

---

[19]     In other words, the undersigned finds that Gibson cannot prove deficiency in performance, for purposes of the cause prong of the cause and prejudice exception to the procedural default doctrine, because Petitioner did not raise these issues as separate claims of ineffective assistance of appellate counsel.

opinion in this case clearly signals that the result of the appeal would not have been different had appellate counsel argued that this Court violated § 3553(a)(4) & (6) by failing to consider the kinds of sentences available. This is, of course, because of the appellate court's recognition that it "'will not second guess the weight (*or lack thereof*) that the [court] afforded to a given [§ 3553(a) factor . . . as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented[,]'" and its ultimate determination that Petitioner's sentence was substantively reasonable and not an abuse of discretion. (Doc. 48, at 4, 5 & 6 (emphasis supplied)). Thus, any failure by this Court to consider or give weight to the § 3553(a)(6) factor[20]—the kinds of sentences available—has no import in light of the substantive reasonableness of Gibson's sentence. Accordingly, Gibson cannot show that the result of his appeal would have been different had this issue been raised on appeal.

As aforesaid, because Petitioner is procedurally barred from raising arguments in the instant motion to vacate that he already raised and were rejected in his direct appeal and has not otherwise established that the cause and prejudice exception to the procedural default doctrine is applicable to any remaining arguments that were not directly raised on appeal, the undersigned cannot reach the merits of those claims, individually, or the overarching argument that this Court imposed a procedurally and substantively unreasonable sentence.

---

[20]     Although Petitioner references § 3553(a)(4) (Doc. 53, at 21; *see also* Doc. 54, at 36), this factor, which is the need to protect the public factor, was specifically considered by the Eleventh Circuit (*see* Doc. 48, at 6 ("His criminal history and escalation to the instant crime of violence invoke the need to consider the public safety aspect of his sentence.")); therefore, this portion of his argument offers him no assistance as it is specifically contradicted by the record.

**C.** **Certificate of Appealability**.   In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Gibson's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, Gibson's habeas petition is being denied both on procedural grounds without reaching the merits of the constitutional claims, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and also on the merits, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as Petitioner has defaulted his "claims" that this Court imposed a procedurally and substantively unreasonable sentence, a reasonable jurist could not conclude either that this Court is in error in denying the instant petition or that Gibson should be allowed to proceed further regarding this claim, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In addition, with respect to his ineffective assistance of counsel claims, it is recommended that the Court find that reasonable jurists could not debate whether Gibson's § 2255 habeas petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability with respect to any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and

recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 53) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was

informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 6th day of October, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**