IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER BRYANT GIBSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | CIVIL ACTION 17-0040-WS-MU |
| v. ) | |
| ) | CRIMINAL NO. 13-0252-WS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

# ORDER

This matter is before the Court on the petitioner's request for certificate of appealability ("COA"). (Doc. 78). Because the Court has already denied the petitioner a COA, (Doc. 63 at 45-47; Docs. 70-71), the Court construes this filing as a motion to reconsider that ruling.

The report and recommendation ("R&R") issued by the Magistrate Judge sets forth the legal test for issuance of a COA. (Doc. 63 at 45-46). The R&R, in addressing the petitioner's claims, also sets forth why the petitioner fails to satisfy that test. The Court herein amplifies the Magistrate Judge's reasoning as follows.

The petitioner pleaded guilty to a single count of bank robbery. (Docs. 1, 22). The plea was blind, meaning that the government did not agree to recommend the low end of the sentencing guideline range or to stand silent at sentencing but that the defendant remained free to challenge all aspects of the future pre-sentence report ("PSR") and to appeal on any available grounds. The petitioner admits that he "always had the intention of pleading guilty," and he does not challenge his plea on any ground. (Doc. 69 at 3). Instead, he challenges only his 96-month sentence.

**I. Ineffective Assistance - Trial Counsel.**

The petitioner seeks a COA as to all eight grounds raised in his petition. (Doc. 78 at 1-2). Each ground is addressed in the R&R, and the Court offers only the following additional observations.

"To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 121 (2011) (internal quotes omitted). "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Id*. (internal quotes omitted). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotes omitted). The standard is "highly deferential," *id*. (internal quotes omitted), to the extent that "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

"To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (internal quotes omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (internal quotes omitted).

**A. Failure to Investigate the Petitioner's Background.**[1]

The petitioner complains that he told counsel he had donated services to Habitat for Humanity and had built accessibility ramps for the disabled, and that he identified witnesses to such efforts, yet counsel failed to contact them or to

---

[1] The motion to vacate and brief extend this claim to a failure to investigate the charges against the petitioner. (Doc. 53 at 14; Doc. 54 at 14). The petitioner has expressly abandoned this portion of his claim. (Doc. 69 at 3).

advise the Court or the probation office of this information. (Doc. 53 at 14; Doc. 54 at 15; Doc. 69 at 3). Counsel's performance was not deficient, since a competent attorney reasonably could have viewed this information as unhelpful to the sentencing decision. Nor did counsel's performance prejudice the petitioner, because the petitioner himself submitted a letter, which the Court considered in imposing sentence, (Doc. 46 at 15, 17), in which he stated that, "when I reached adulthood I used my skill in carpentry to build wheelchair ramps and donated my time with Habitat for Humanity." (Doc. 83).

### B. Failure to Convey or Pursue a Plea Offer.

The petitioner alleges that counsel failed to convey to him a plea offer made by the government and that he failed to pursue a plea agreement under which the government would recommend a low-end sentence. (Doc. 53 at 15; Doc. 54 at 16-19). As stated in the R&R, (Doc. 63 at 28), the former assertion is based exclusively on the government's statement at sentencing that "there is no plea agreement," a benign proposition that does not remotely suggest a plea offer was ever made. (Doc. 46 at 14). Counsel could not perform deficiently by failing to convey a plea offer that was never made, and the petitioner could not be prejudiced by the failure to convey a non-existent offer.

The petitioner was arrested on November 13, 2013. In mid-December 2013, counsel advised the petitioner to enter a blind plea, which the petitioner did in January 2014. (Doc. 54 at 40). The petitioner asserts that counsel failed to "pursue" a plea agreement and that there is a reasonable probability that, had he done so, the government would have agreed to recommend a low-end guideline sentence. (*Id*. at 19). As this Court has noted, a blind plea is not inherently inferior to a plea deal; under the former, the defendant receives no government recommendation for a low-end sentence, but he remains free to argue for a lower guideline range and to appeal on any available grounds. "Evaluating such a trade-off represents a quintessentially strategic decision, immune from second-guessing

3

in the guise of an ineffective assistance challenge." *Bracy v. United States*, 2010 WL 749330 at *7 (S.D. Ala. 2010). Only once has the Eleventh Circuit been known to find deficient performance in the context of a blind plea, and in that case the defendant, who thought his exposure was ten years, received a 99-year mandatory minimum sentence due to his criminal history (which counsel failed to investigate before recommending a blind plea). *Esslinger v. Davis*, 44 F.3d 1515, 1529-30 (11th Cir. 1995).

    Nor was the petitioner prejudiced by counsel's performance. First, he identifies no evidence that the government was interested in reaching a plea deal at all, much less one in which it would recommend a low-end sentence; simply positing that "the majority of criminal cases in the federal system" result in such a deal, (Doc. 54 at 18), does not do the trick.[2] Second, he has not alleged that he would have accepted such a deal had it been offered; while he might have liked to receive a low-end guideline recommendation, he has not stated that he would have traded away the right to challenge the guideline calculation and the right to appeal on any available ground. Without such an allegation, he cannot show prejudice. *E.g., Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015) (defendant's claim that trial counsel failed to seek a plea deal on his behalf failed because he "did not allege that he would have accepted a guilty plea ... but for the alleged errors" of counsel).[3]

---

    [2] The government represents in brief that the prosecutor was unwilling to accede to a low-end guideline recommendation. (Doc. 58 at 7).

    [3] The implausibility of the petitioner agreeing to such a deal is evident. The low end of the guideline range as calculated by the probation office and found by the Court was 87 months. (Doc. 25 at 17; Doc. 46 at 11). Had the petitioner made the deal he now claims should have been made (and had the Court honored the government's recommendation), he would have been stuck with an 87-month sentence and could not have successfully argued on appeal (as he did) that the correct low end of the guideline range was 46 months. (Doc. 48). Although the record is silent, this may well be why counsel encouraged a blind plea.

### C. Underestimating Sentencing Exposure.

According to the petitioner, counsel advised him at arraignment (their first meeting) that he was looking at no more than five years but most likely three to four years. (Doc. 54 at 40). The petitioner admits counsel provided him only an "estimate" of his sentencing range, not a promise or guarantee. (Doc. 53 at 15; Doc. 54 at 19). The petitioner identifies no evidence that the figures suggested by counsel at arraignment do not reflect typical sentencing ranges in bank robbery cases in this district.

Counsel's performance was not deficient for at least the following reasons: (1) he gave only an estimate, not a guarantee; and (2) the estimate was reasonable (indeed, it comported with both the probation office's estimate of the guideline range handed down a few days after arraignment and with the Eleventh Circuit's calculation of the guideline range on appeal). (Doc. 16 at 6; Doc. 48 at 4-5).

Nor did the petitioner suffer actionable prejudice as a result of counsel's estimate. The petitioner suggests he would have insisted on plea negotiations had he realized he could receive an eight-year sentence but, as discussed in Part B, he has shown no reasonable probability that the government would have agreed to recommend a low-end sentence or that he would have surrendered his ability to challenge the guideline calculations or to appeal on any available ground, as a plea agreement would have required.[4]

### D. Failure to Share the Amended Pre-Sentence Report.

The draft PSR included a two-point adjustment under Section 3C1.2. (Doc. 23 at 6). Counsel filed an objection to this adjustment on the grounds of impermissible double-counting. (Doc. 24 at 2). The probation officer agreed with his objection, (Doc. 26 at 1), and the final PSR removed this adjustment; however,

---

[4] As noted, the petitioner admits he would have pleaded guilty regardless of whether a plea deal was in place. He therefore cannot demonstrate prejudice by showing he would have insisted on proceeding to trial. *E.g., Lynch v. Secretary, Department of Corrections*, 776 F.3d 1209, 1219 (11th Cir. 2015).

5

the final PSR added a different adjustment under Section 3C1.1. (Doc. 25 at 6). The petitioner admits that counsel reviewed with him the draft PSR but denies he was made aware of the change in the final version from Section 3C1.2 to 3C1.1. This failure, he says, deprived him of the opportunity to object to the adjustment.

Counsel's performance was not deficient because he had reviewed the draft PSR with the petitioner, and the adjustment appearing in the final version was based on information the two had already discussed. Section 3C1.2 deals with reckless endangerment during flight from a law enforcement officer, while Section 3C1.1 deals with obstruction of justice, including by "escaping or attempting to escape from custody before trial." U.S.S.G. § 3C1.1 application note 4(E). Both adjustments were based on the petitioner's conduct following his arrest, when he faked a medical condition in order to be taken to a hospital, where he fought an officer for control of his weapon while yelling he would kill the officer. (Doc. 25 at 4; Doc. 48 at 4-5). The petitioner says he must be afforded an opportunity to challenge false information in the PSR, (Doc. 54 at 19-20); that opportunity was afforded him with regard to the hospital incident when he and counsel discussed the draft PSR, which contained the same information. (Doc. 23 at 4).[5]

Nor was the petitioner prejudiced by the failure of counsel to discuss with him the adjustment under Section 3C1.1. The petitioner says he was prejudiced because he had no opportunity to object to the adjustment, but it is for counsel - not the petitioner - to register objections. Counsel did in fact object to the adjustment, on the grounds of remoteness and double-counting. (Doc. 46 at 6-7, 9-10). The petitioner insists that, had he known of the adjustment, he could have argued against it on the grounds that "there were no federal charges filed" at the

---

[5] The petitioner appears to believe that Section 3552(d) and Rule 32(g) obligated counsel to discuss the amended PSR with him. (Doc. 53 at 15; Doc. 54 at 20). They do not. These provisions address only the length of time before sentencing that the probation office must submit the draft and final PSR's; those deadlines were met in this case.

time of the conduct on which the adjustment was based. (Doc. 53 at 15). Again, it is not for the petitioner to make legal arguments; in any event, his proposed argument would have failed because it is legally wrong. The petitioner had not been indicted when he attempted to escape, but he was under arrest and had been interviewed about the bank robbery by the FBI at its offices shortly before he engineered a trip from the Daphne Police Department to the hospital. (Doc. 25 at 4).[6] That is sufficient to support the adjustment. *United States v. Frasier*, 381 F.3d 1097, 1100 (11th Cir. 2004) (rejecting the defendant's argument "that section 3C1.1 is inapplicable in this case because no federal charges were pending at the time of his escape attempt"; "[b]ecause an FBI agent had informed appellant prior to his attempted escape that the federal government was going to prosecute him, we conclude that the district court was justified in imposing the obstruction-of-justice enhancement.").[7]

### E. Failure to Request Psychiatric Examination.

The bank robbery occurred on November 12, 2013. The next day, the petitioner was booked into the Baldwin County jail and placed on suicide watch for about three weeks. (Doc. 54 at 40). In March 2014, the petitioner advised counsel and the probation office that he had been on suicide watch and that he was being treated with psychotropic medications (BuSpar and Paxil). (*Id*.; Doc. 25 at

---

[6] The petitioner's suggestion that the investigation had not yet begun, (Doc. 54 at 27), is patently incorrect.

[7] The same authority refutes the petitioner's unsupported and untimely *ipse dixit* that the adjustment applies only if he was "restrained or shackled" when he attempted his escape. (Doc. 69 at 6).

The petitioner's astonishing suggestion that he "was unaware of federal charges to be brought against him," even after being arrested and interviewed about the bank robbery by the FBI, (Doc. 54 at 27), cannot support his claim, because a competent attorney could reasonably believe a challenge based on such an obvious falsehood would not only fail but expose the petitioner to additional charges and/or an enhanced sentence.

7

15-16). The petitioner claims that counsel, having received this information, should have moved for a psychiatric evaluation; had one been obtained, he continues, it would have revealed post-traumatic stress disorder ("PTSD"),[8] and that diagnosis would have led the Court to grant a downward departure under Section 5K2.13 or at least to impose a lesser sentence than 96 months. (Doc. 53 at 16; Doc. 54 at 20-21).

Counsel was not deficient in failing to seek a psychiatric evaluation of the petitioner. What the petitioner reported to counsel and the probation office was that, prior to his arrest, he had never been diagnosed with any mental or emotional health problem, and he reported no family history of such problems. He reported that he was placed on suicide watch and on BuSpar and Paxil because, *after* he was incarcerated, he began having panic attacks, depression and anxiety. He also reported that for many years he had used both spice and prescription pills, his daily use of these substances suddenly and involuntarily ending upon his arrest. (Doc. 25 at 16). A competent attorney presented this information could reasonably believe that his client had no mental issues (beyond substance abuse) when he committed bank robbery and that his later problems were due to his capture, substance abuse withdrawal, the prospect of lengthy incarceration, etc.

Nor was the petitioner prejudiced by counsel's performance. The petitioner's PTSD, had it been established prior to sentencing, would not have rendered him eligible for a downward departure, because the petitioner has identified no evidence that this condition "contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. Moreover, relief under this provision is unavailable when, as here, "the offense involved actual violence or a serious threat of violence" or "the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." *Id*. The petitioner's alternative suggestion that the Court would have reduced his sentence below 96 months had it known he had

---

[8] The petitioner apparently was diagnosed with PTSD in October 2014. (Doc. 53 at 16; Doc. 54 at 20; Doc. 69 at 13).

8

PTSD fails for the same reasons: the petitioner has identified no causal connection between his PTSD and his commission of bank robbery, and in any event the violence inherent in his crime and evident in his past would have prompted the Court to impose a 96-month sentence regardless of any PTSD.

### F. Failure to Object to Section 3C1.1 Adjustment.[9]

As noted in Part I.D, counsel did in fact object to this adjustment. (Doc. 46 at 6 -7, 9-10). As also noted in Part I.D, the petitioner's proposed "no federal charges" argument is legally meritless. The petitioner additionally posits that the adjustment "requires a significant amount of planning, as opposed to being the result of a spur of the moment decision or stemming from merely panic, confusion or mistake." (Doc. 54 at 22; *accord id*. at 26-27). As his own authority makes clear, such analysis is used only to evaluate conduct that Section 3C1.1 does not expressly list as constituting obstructive conduct.[10] Because escape and attempted escape are so listed, there is no room for additional analysis as to whether they qualify for the adjustment. Even if there were, the petitioner's orchestration of his escape attempt by faking a medical condition in order to be transported from the police department (filled with armed officers) to the hospital (with only one) reflects significant planning, and it is painfully obvious the petitioner did not attempt to escape by accident or because he did not understand he was in custody.

In short, counsel did not perform deficiently by not advancing the petitioner's meritless arguments, and the petitioner was not prejudiced by counsel's failure to present arguments the Court would have swiftly and correctly rejected.

---

[9] While the petitioner's request for a COA suggests this ground extends to other adjustments, (Doc. 78 at 2), both his motion to vacate and his brief limit the scope of this ground to Section 3C1.1. (Doc. 53 at 16; Doc. 54 at 21-22).

[10] The petitioner relies on *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). *Phillips* relied on *United States v. Greer*, 158 F.3d 228 (5th Cir. 1998), which employed the petitioner's proposed analysis to assess conduct not listed in application note 4, *viz*., feigning incompetence. *Id*. at 235.

**G. Failure to Object to Reliance on Previous and Later Conduct.**

The petitioner asserts that his 96-month sentence was substantively unreasonable and based on an abuse of discretion, in that the Court considered his post-arrest conduct and his juvenile criminal history, and that counsel was ineffective in failing to object. (Doc. 53 at 16; Doc. 69 at 8). The petitioner appears to believe that such matters cannot be relevant under Section 3553(a). (Doc. 54 at 31; Doc. 69 at 9). He is wrong. As the Eleventh Circuit held in this very case, the Court "properly considered Gibson's dangerous [post-arrest] conduct and consistent criminal history" as going to "the history and characteristics of the defendant" under Section 3553(a)(1) and "the need for the sentence imposed ... to protect the public from further crimes of the defendant" under Section 3553(a)(2)(C). (Doc. 48 at 5). The Eleventh Circuit expressly rejected the argument the petitioner raised on appeal, and raises again here, that his sentence was rendered substantively unreasonable and an abuse of discretion due its consideration of these matters. (*Id*. at 5-6). Counsel did not perform deficiently by failing to make a meritless objection, and the petitioner was not prejudiced by that failure.[11]

**H. Failure to Present Mitigating Evidence.**

The petitioner complains that counsel at sentencing did not address the petitioner's service with the fire department, his volunteer work with Habitat for Humanity and building accessibility ramps, or his possible mental disorder. (Doc. 53 at 17; Doc. 54 at 22-23). Counsel did not perform deficiently, since he in fact mentioned the petitioner's work as a firefighter, (Doc. 46 at 12), the Court was aware of that work from the PSR, (Doc. 25 at 16), the Court was aware of the petitioner's volunteer work from his letter to the Court, (Doc. 83), and the Court

---

[11] In his brief regarding this claim, the petitioner asserts an entirely different claim. (Doc. 54 at 22). That claim is meritless for reasons explained *infra* note 15.

was aware of his panic attacks, anxiety and depression from the PSR. (Doc. 25 at 16). Nor was the petitioner prejudiced by counsel's performance, since the Court took all this information into consideration in fashioning an appropriate sentence. (Doc. 46 at 15).

### I. Failure to Object to Section 2B3.1(b)(2)(F) Adjustment.

The PSR, which the Court adopted as published, (Doc. 46 at 11), included a two-level adjustment because a threat of death was made in connection with the bank robbery. (Doc. 25 at 6). The enhancement was based on the report of the teller, as recounted in the PSR, that the defendant handed her a note reading, "$8,000," "No Dye Pack," and "Kill You." (*Id*. at 3). Counsel did not object to the adjustment. The petitioner's eight listed grounds of ineffective assistance of trial counsel (addressed above in Parts A-H) do not mention this failure; nor does the argument section of his brief. At several other points, however, the petitioner expressed his displeasure with counsel's failure to raise this objection, and in his reply brief he identified it as an instance of ineffective assistance. (Doc. 54 at 7, 10, 41; Doc. 59 at 1-2). The Magistrate Judge addressed and rejected the claim in his R&R. (Doc. 63 at 34-35 n.16). Although the petitioner does not identify this issue in his request for a COA, in the interests of thoroughness the Court will address the issue nevertheless.

Counsel did not perform deficiently by failing to object to the adjustment. The government has the burden of proof regarding disputed upward adjustments,[12] but a competent attorney could reasonably conclude that, if he challenged the adjustment for threat of death, the government would produce the teller at the sentencing hearing to repeat what was contained in the PSR. In that likely event, a challenge could succeed only if counsel could present affirmative evidence that no

---

[12] *United States v. Bailey*, 961 F.2d 180, 181 (11th Cir. 1992); *accord United States v. Tejas*, 868 F.3d 11242, 1248 (11th Cir. 2017).

11

such threat was made. There were only three possible sources of such evidence: (1) the note itself; (2) the video of the encounter; and (3) the petitioner's testimony. The note was unavailable, the petitioner having taken it with him. (Doc. 45 at 17). Had the video shown that the note contained no threat of death, the government would have been required to produce it under *Brady* and Criminal Local Rule 16(b)(1)(B); because the video was not produced,[13] a competent attorney could reasonably conclude that it did not undermine the teller's account. While the petitioner presumably could have testified that the note did not include the phrase, "Kill You," or any other express or implied threat of death, a competent attorney could reasonably conclude that the risks of such testimony outweighed the possible benefits. In particular, he could reasonably believe that the Court would credit the disinterested teller's version over the defendant's self-interested version and would further conclude that the defendant's version amounted to perjury, exposing the defendant to the Court's indignation and a higher sentence. *See, e.g., United States v. Singh*, 291 F.3d 756, 763-64 (11th Cir. 2002) (obstruction of justice enhancement based on perjury at sentencing).

## II. Ineffective Assistance - Appellate Counsel.

The petitioner seeks a COA as to all five grounds raised in his petition. (Doc. 78 at 3). Each ground is addressed in the R&R, and the Court offers only the following additional observations.

### A, B. Failure to Argue that Reliance on Escape Attempt and Juvenile Criminal History Was an Abuse of Discretion.

The Eleventh Circuit's express holding that the Court properly considered these matters and that the resulting sentence was substantively reasonable and not an abuse of discretion, (Doc. 48), is dispositive. Assuming without deciding that

---

[13] The petitioner recently filed a motion seeking production of the video. (Doc. 64).

12

counsel did not make the proposed argument,[14] she did not perform deficiently by failing to make a meritless argument, and the petitioner was not prejudiced by such failure.[15]

### C. Failure to Assert "Nexus" Objection to Obstruction of Justice Adjustment.

For reasons stated in Part I.D, the petitioner's proposed objection is legally insupportable. Counsel did not perform deficiently by failing to make a meritless argument, and the petitioner was not prejudiced by such failure.

### D. Failure to Provide Appellate Court with Statement of Reasons.

Under Part IV of its statement of reasons, the Court determined that "[t]he sentence is within an advisory guideline range." The Court left blank Part VI, which addresses a "court determination for sentence outside the advisory guideline system." (Doc. 35 at 2, 3). The petitioner argues that these sections "show that a guidelines sentence was intended," such that the Court's miscalculation of the guidelines range "did in fact affect the defendant's substantial rights." (Doc. 53 at 19; Doc. 54 at 22).

Assuming without deciding that the Eleventh Circuit was not provided the statement of reasons, counsel's omission did not constitute deficient performance, because the petitioner makes no claim that counsel should have argued on appeal

---

[14] She clearly argued that the 96-month sentence was substantively unreasonable. (Doc. 48 at 2).

[15] The petitioner includes within this claim the assertion that appellate counsel was ineffective in not objecting to the Court's failure to give advance notice that it was considering an upward departure. (Doc. 54 at 25-26). As discussed in Part III.C, the Court did not impose an upward departure but an upward variance. The requirement of advance notice does not apply to variances, only to upward departures. *E.g., United States v. Irizarry*, 458 F.3d 1208, 1211-12 (11th Cir. 2006); Fed. R. Crim. P. 32(h). Appellate counsel could not have performed deficiently by failing to make a meritless argument, and the petitioner could not have been prejudiced by such failure.

that the Court limited its sentence to the high end of the actual guideline range. Nor was the petitioner prejudiced by the omission, since any such claim would not have succeeded. The Court clearly stated at sentencing that, while it understood 96 months to be within the guideline range (as reflected in the statement of reasons), it would impose the same sentence even if the high end of the guideline range were, as the petitioner contended, well below that figure. (Doc. 46 at 18). The Court could not have been clearer that it did not limit itself to a guideline sentence. The statement of reasons is perfectly consistent with the Court's oral pronouncement, and the former could not possibly have led the appellate court to hold that the Court ruled out any sentence above the actual guideline range.

### E. Failure to Request Oral Argument.

The petitioner asserts that counsel did not move for oral argument and that, had she done so, and had oral argument been granted, "it could have influenced the appellate court's ruling." (Doc. 53 at 19).

To show deficient performance, the petitioner announces as a universal principle (unsupported by any cited authority) that "[t]here is no sound strategy in not requesting oral argument." (Doc. 54 at 28). The question, however, is whether any competent attorney could have elected not to seek oral argument. The answer is plainly in the affirmative; counsel reasonably could have concluded that her brief was as clear and forceful as she could be on oral argument, that oral argument was unlikely to be granted, that the appellate court could order oral argument regardless of whether she requested it, and that oral argument was unlikely to be helpful to her client even if granted. *E.g., Rathbun v. Prosper*, 2010 WL 796977 at *8 (E.D. Cal. 2010).

The petitioner makes no effort to show prejudice from counsel's failure to request oral argument. He has not explained how counsel's physical presence before a panel of appellate judges would raise a reasonable probability that her position on appeal would be sustained; indeed, he has not explained how a request

for oral argument raises a reasonable probability that the request would be granted.[16] His situation is thus no better than in the many cases in which ineffective assistance claims based on a failure to request appellate oral argument have failed for want of any indication the appellate decision would have been more favorable had oral argument occurred. *E.g., Vega v. United States*, 261 F. Supp. 2d 175, 177 (E.D.N.Y. 2003); *Snell v. Lockart*, 791 F. Supp. 1367, 1382 n.10 (E.D. Ark. 1992), *rev'd in part on other grounds*, 14 F.3d 1289 (8th Cir. 1994); *Moulton v. United States*, 2012 WL 1884893 at *8 (N.D. Ala. 2012); *Rathbun*, 2010 WL 796977 at *8; *United States v. Cohen*, 2009 WL 6313793 at *5 (D. Ariz. 2009); *Ouellette v. McKee*, 2008 WL 4376374 at *19 (W.D. Mich. 2008); *United States v. Neeley*, 2001 WL 521841 at *5 (N.D. Ill. 2001).

**III. Due Process Violations - Sentencing.**

The petitioner seeks a COA as to all five grounds raised in his petition. (Doc. 78 at 4). Each ground is addressed in the R&R, and the Court offers only the following additional observations.

**A. Failure to Correctly Calculate the Guideline Range.**

The petitioner argues that the Court incorrectly found all three upward adjustments identified in the PSR. (Doc. 53 at 20). As to the six-level adjustment under Section 3A1.2(c)(1), the Eleventh Circuit agreed with the petitioner. (Doc. 48 at 3-5). It also ruled, however, that the petitioner's 96-month sentence was

---

[16] When a request for oral argument is received, "[t]he court will accord these statements due, though not controlling, weight in determining whether oral argument will be heard." Eleventh Circuit Rule 28-1(c). Even when such a request is received, the panel generally will not hold oral argument if it unanimously determines that "the facts and legal arguments are adequately presented in the briefs and record and the decisional process will not be significantly aided by oral argument." *Id.* Rule 34-3(b)(3). The petitioner has not attempted to show that the facts and legal arguments were not adequately presented in the briefs and record, or that a request for oral argument would have raised a reasonable probability of persuading the panel that oral argument would significantly assist its decision-making process.

15

nevertheless substantively reasonable, and not an abuse of discretion, as a variance. (*Id*. at 5-6). The Court's error in calculating the guidelines thus can furnish no ground for habeas relief.

As to the two-level adjustment under Section 3C1.1, the discussion in Parts I.D, I.F and II.C demonstrates that the adjustment does apply and that all of the petitioner's arguments to the contrary are meritless. This confirms both the bankruptcy of the petitioner's claim and his inability to establish cause and prejudice, in the form of ineffective assistance of trial and appellate counsel, for his procedural default.

As to the two-level adjustment under Section 2B3.1(b)(2)(F), the discussion in Part I.I demonstrates both that, based on the evidence before the Court at sentencing, the adjustment does apply and that the petitioner cannot establish cause and prejudice, in the form of ineffective assistance of trial and appellate counsel, for his procedural default.

### B. Failure to Present the Defendant with the Final PSR.

As noted in Part I.D, the petitioner asserts that, although he received the draft PSR and discussed it with counsel, he did not receive the final PSR and so was not aware until sentencing that the adjustment under Section 3C1.2 and been changed to an adjustment under Section 3C1.1. The petitioner claims that the Court violated 18 U.S.C. § 3552(d) and Federal Rule of Criminal Procedure 32(g) by failing to ensure that he received the final PSR prior to sentencing. (Doc. 53 at 20).

By its terms, Rule 32(g) places responsibility for distributing the PSR on the probation officer, not the Court. While Section 3552(d) provides that "[t]he court shall assure that a report filed pursuant to this section is disclosed to the defendant [and] the counsel for the defendant," that provision "is susceptible to harmless-error analysis." *United States v. Willis*, 649 F.3d 1248, 1257 (11th Cir. 2011). For reasons stated in Parts I.D and I.F., any failure of the petitioner to

receive the final PSR prior to sentencing was harmless. In a nutshell: (1) counsel did timely receive the final PSR; (2) counsel objected to the adjustment under Section 3C1.1, which is the only new material in the final PSR; (3) the petitioner had already had full opportunity to address with his lawyer all the facts regarding the conduct on which the adjustment was based; and (4) the petitioner's proposed legal arguments in opposition to the adjustment are all patently meritless.

### C. Consideration of Juvenile Criminal History.[17]

The petitioner argues that Section 4A1.3(a)(2) precluded the Court from considering his juvenile criminal history. (Doc. 54 at 34-35). By its terms, that provision limits only the kinds of criminal history that can be considered in imposing an upward departure from the guideline range. As the Eleventh Circuit has recognized, the Court did not impose an upward departure but a variance, based on its consideration of the Section 3553(a) factors. (Doc. 48 at 5). *See generally United States v. Irizarry*, 458 F.3d 1208, 1211-12 (11th Cir. 2006) (explaining difference between a departure and a variance). As the panel held, "[j]uvenile convictions not similar to the conviction and too remote to use in calculating the defendant's criminal history category can be properly considered by the district court in its consideration of the 3553(a) factors." (Doc. 48 at 4). The panel further ruled that "the district court properly considered Gibson's ... consistent criminal history even though these facts were not reflected in the guidelines range. ... Gibson's criminal history category of I did not adequately reflect the 17 convictions he received as a juvenile and an adult. His criminal history ... invoke[s] the need to consider the public safety aspect of his sentence"

---

[17] In his request for COA, the petitioner suggests this issue extends to consideration of his escape attempt. (Doc. 78 at 4). It does not. His motion to vacate and brief expressly limit this claim to consideration of juvenile criminal history. (Doc. 53 at 21; Doc. 54 at 34-35).

17

under Section 3553(a)(2)(c). (Doc. 48 at 5-6). In short, the Eleventh Circuit has already foreclosed the petitioner's argument.

**D. Failure to State on the Record Reasons for Non-Guideline Sentence.**

After entertaining the petitioner's objections to the six-level adjustment under Section 3A1.2(c)(1) and the two-level adjustment under Section 3C1.1, the Court adopted the PSR as published, with its guideline range of 87 to 108 months. (Doc. 46 at 11). After considering the guideline range, the other information before it, and the Section 3553(a) factors, the Court imposed a sentence of 96 months. (*Id*. at 15-18). The Court then noted that, while it considered its guideline rulings to be accurate, it would impose the same 96-month sentence even if the petitioner's challenges to those adjustments were meritorious and the guideline range substantially lower, based on its consideration of the Section 3553(a) factors. (*Id*. at 18). The Court identified those factors as including the petitioner's escape attempt and his egregious criminal history. (*Id*. at 15-17).

The petitioner claims that the Court erred in imposing a sentence outside the guideline range (as it became, once the Eleventh Circuit eliminated the six-level adjustment) "without explaining the specific reasons for doing so," as required by Section 3553(c). (Doc. 53 at 21; Doc. 54 at 35). As discussed in the preceding paragraph, however, the Court explicitly identified the reasons it believed a 96-month sentence to be appropriate even if it fell above the guideline range.

The petitioner notes that Section 3553(c) requires that the reasons for a non-guideline sentence be stated with specificity both "in open court" and "in a statement of reasons form." The Court's statement of reasons does not do so because the Court believed its guideline rulings to be correct and the 96-month sentence therefore to be a guideline sentence. But even if Section 3553(c) applies in such a situation, the Court's omission was harmless error. *United States v. Freeman*, 396 Fed. Appx. 674, 677-78 (11th Cir. 2010) (where sentencing court

18

stated on the record its reasons for a non-guideline sentence, its failure to state those reasons in a statement of reasons form was harmless error because it "had no effect on [the defendant's] ultimate sentence."); *accord United States v. Claiborne*, 626 Fed. Appx. 848, 850-51 (11th Cir. 2015); *cf. United States v. Ramos*, 433 Fed. Appx. 893, 897-98 (11th Cir. 2011) (purpose of statement of reasons is to allow for meaningful appellate review of a sentence, and when those reasons are pronounced orally at sentencing, that purpose is satisfied and the failure to repeat those reasons in a statement of reasons form is not plain error permitting reversal despite the lack of timely objection); *United States v. Thomas*, 313 Fed. Appx. 280, 283 (11th Cir. 2009) (same).

### E. Failure to Comply with Section 3553(a)(4) and (6).

The petitioner argues that, by failing to correctly calculate the guideline range, the Court necessarily did not consider the guideline range under Section 3553(a)(4) or the need to avoid unwarranted sentence disparities under Section 3553(a)(6), which led to a procedurally and substantively unreasonable sentence. (Doc. 53 at 21; Doc. 54 at 36-37). The petitioner bases his claim on *Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016), but that case actually demonstrates why he has no claim.

*Molina-Martinez* recognizes that the guideline range is "not only the starting point" for determination of a federal sentence "but also the lodestar," such that a defendant needs no additional evidence in order to raise a reasonable probability that his sentence would have been different had the guideline range been accurately calculated. 136 S. Ct. at 1346-47. However, "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. ... The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." *Id*. at 1346. That is precisely the situation

here, and it precludes the petitioner from demonstrating prejudice from the Court's incorrect calculation of the guideline range.[18]

**IV. Due Process Violations - Motion to Vacate.**

The petitioner seeks a COA with respect to the following issues: (1) failure to hold an evidentiary hearing; (2) denial of the petitioner's motion for discovery; and (3) failure to acknowledge his supplemental brief. (Doc. 78 at 5). For reasons expressed herein and in the R&R, no evidentiary hearing was required or appropriate. For reasons expressed herein and in the order of denial, (Doc. 68), the petitioner's motion for discovery was properly denied. The petitioner's supplemental brief establishes nothing except a different disposition (in October 2017) of the state charges against him stemming from his bank robbery and escape attempt, (Doc. 66), which event is irrelevant to whether the petitioner's federal sentence violates the laws or Constitution of the United States.

**CONCLUSION**

For the reasons set forth above and in the R&R, the petitioner's motion for COA is **denied**.

DONE and ORDERED this 29th day of January, 2018.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE

---

[18] The petitioner does not explain how the Court's error in calculating the guideline range could possibly implicate an unwarranted sentence disparity, and no such explanation is apparent.